## TEXAS & N. O. R. CO. v. GLASS.

### No. 1915.

Court of Civil Appeals of Texas. Waco.

June 24, 1937.

Rehearing Denied July 15, 1937.

Sewell, Taylor, Morris & Garwood and Baker, Botts, Andrews & Wharton, all of Houston, and Tom B. Bartlett, of Marlin, for appellant.

E. M. Dodson and Cecil R. Glass, both of Marlin, for appellee.

ALEXANDER, Justice.

Hugh Glass brought this suit against the Texas & New Orleans Railroad Company to recover damages for the alleged negligent destruction of a barn and its contents by fire. It was alleged that one of the defendant's engines was negligently

operated in such manner as to cause sparks to escape therefrom and set fire to said property. The jury, in answer to special issue, found that the fire which destroyed plaintiff's property was set out by sparks emitted from defendant's engine; that the defendant was negligent in failing to equip its engines with spark arresters, which negligence was a proximate cause of the fire; that at the time the engine in question was passing in the vicinity of plaintiff's barn, the employees in charge thereof negligently caused the flues and tubes thereof to be sanded and otherwise handled such engine in such careless and unskillful manner as to cause sparks of fire, molten sand, and burning embers to be emitted from such engine in such quantities that they set fire to plaintiff's barn and proximately caused the loss thereof. In response to the verdict, judgment was rendered for the plaintiff for the sum of $2,181. Defendant appealed.

The appellant attacks the various findings of the jury as being unsupported by the evidence. There was evidence that appellant used only oil-burning engines, and its experts testified that an oil-burning engine would not emit sparks or cause a fire. There was evidence that the flues in the boiler on an oil-burning engine are cleaned by blowing sand through them; that this is usually done at some place in the country while the engine is running fast on an upgrade and working a full head of steam; that this is necessary in order to secure the proper amount of force behind the sand so that it will cut the soot and carbon out of the flues; and that the railroad employees have instructions not to sand the flues in a city or other populated district. Appellee's barn was situated about 220 feet west of the railroad track, at a place where the track runs in practically a north and south direction. The barn was covered with corrugated iron, with three 36-inch ventilators through the roof. On the day of the fire there was a strong wind blowing from the direction of the railroad toward the barn. There was a grade on the railroad track opposite the barn. One of appellee's neighbors, who lived a short distance north of the barn, testified that on the day of the fire he saw one of appellant's long freight trains running north just a short time before the fire was discovered. He said that the train was

running upgrade, laboring hard, and throwing out a large volume of smoke. The smoke was being blown over the barn. Another neighbor, who lived just east of the railroad track opposite appellee's barn, testified that he saw the same train. He said that when the train started up the grade, it "blowed out a lot of smoke and made a whole lot of unusual noise. It throwed out little sparks along and a big heavy smoke." He further testified that the unusual noise made by the train started suddenly and blew a heavy smoke toward appellee's barn. Otho Broomfield, a colored man who had worked for various members of the Glass family for twenty years prior to the fire, testified that on the day of the fire he was engaged in hauling cotton seed out of the barn. He had been loading his wagon on the north side of the barn and had driven out and started around the barn, between the barn and the railroad track, when one of appellant's long freight trains passed the barn going north. He further testified:

"There was plenty of smoke coming out of the smokestack, and when the train ran past, it burned my face and hands and went in this eye and I had to pull my cap over it and lie down in the wagon to keep it from burning my face. * * *

"Q. Was the barn full of smoke? A. Yes, I had to stop my mules. * * * It (the train) was making a great lot of noise, more than trains that had been passing there on days before would make.

"Q. Did you or not see any embers? A. Yes, on my leather cap and on that seed in the wagon. * * * They (the sparks) blistered my face. * * * I got burned on the right side of my face. I was standing in the wagon. * * *

"Q. Did you say pieces of that caught the cotton seed on fire? A. No, I said ashes were on there like something had burned up and left soft ashes.

"Q. Could you see that plainly? A. Yes."

He said that the fire was discovered in the hay in the barn immediately under one of the ventilators about thirty minutes or an hour after the train had passed. While the railroad employees, who were in charge of the engine, denied having sanded the flues of the boiler at or near the scene of the fire and no one testified positively to the contrary, we think the above circumstantial evidence was sufficient

to raise the issue and to justify the finding of the jury that said employees did, in fact, sand the flues while the engine was in the vicinity of the barn. Harpold v. Moss, 101 Tex. 540, 109 S.W. 928. In this connection, we note that counsel for appellant observes that the evidence given by Otho Broomfield "shows that his love of justice, if not exactly obscured by his love for his 'white folks,' is at least co-extensive with it," and that the portion of his evidence dealing with the fire is more or less ridiculous. While this witness was rather liberal in testifying for his employer, we cannot say that his evidence was so unreasonable as to be ridiculous and unbelievable. The jury saw, heard, and believed him, and we are bound by the verdict.

Notwithstanding the testimony of the experts to the effect that an oil-burning engine would not emit sparks of sufficient size to cause a fire, we think the evidence in this case was sufficient to justify the jury in finding that this engine did actually cause the fire complained of. It was also for the jury to say whether the railway employees were negligent in sanding the flues of the boiler at a place opposite appellee's barn, while there was a strong wind blowing from the direction of the train toward the barn, and whether the sparks emitted by the engine caused the fire. Houston & T. C. Ry. Co. v. Washington, 60 Tex.Civ.App. 391, 127 S.W. 1126; Gulf, C. & S. F. Ry. Co. v. Curry (Tex.Civ.App.) 135 S.W. 592; Schattenberg v. Houston E. & W. T. Ry. Co. (Tex.Civ.App.) 168 S.W. 8; International-G. N. Ry. Co. v. Straub (Tex.Civ. App.) 7 S.W.(2d) 112.

If, as found by the jury, the railway employees were negligent in the manner of the operation of said engine and thereby negligently caused it to emit sparks and burn appellee's barn, the company is liable for the damages thereby, regardless of whether the railroad company had exercised due care in equipping its engine. 19 Tex.Jur. 665. Hence, it becomes unnecessary for us to consider appellant's contention that the evidence was insufficient to support the jury's finding that the railroad company was negligent in failing to equip its engines with spark arresters.

Appellant introduced several experts who testified that an oil-burning engine would not emit sparks of sufficient size to cause a fire. In rebuttal, appellee was permitted, over appellant's objection, to prove by several laymen that on other occasions they had seen oil burning engines on appellant's line set out fires. One witness was permitted to testify that he had seen oil-burning engines on other railroads set out fires. The admission of this evidence was assigned as error. We think the testimony was admissible. It is very generally held that where a railroad company introduces evidence that all its locomotives are so equipped and operated as not to emit sparks and cause fires, the plaintiff, in rebuttal, may introduce evidence to show that defendant's engines, other than the one alleged to have caused the fire in question, have caused fires on other occasions. 51 C.J. 1223; Galveston, H. & S. A. Ry. Co. v. Brune (Tex.Civ.App.) 181 S.W. 547; St. Louis S. W. Ry. Co. v. Wood (Tex.Civ.App.) 192 S.W. 812, 813. When the testimony of experts thus runs contrary to the common experience of laymen, the testimony of such laymen concerning their experiences is usually admissible for the purpose of refuting the opinions of the experts, for, if this were not true, the litigant would be left to the mercy of the expert. In this case, appellant's experts did not confine their testimony to the particular engine that is alleged to have set out this fire, nor to oil-burning engines operated by appellant only, but undertook to cover the entire field and testified that oil-burning engines generally could not and would not emit sparks sufficient to set out a fire. We think that when appellant thus assumed the burden and undertook to prove by these experts that oil-burning engines generally would not cause a fire, it invited rebuttal evidence covering the same broad field so opened up by it and appellee had a right to reply in kind and to prove that other oil-burning railroad engines, including those operated on other lines, had actually set out fires.

We have considered all other assignments and find them without merit.

The judgment of the trial court is affirmed.